

FILED
2017 Jun-20  AM 09:11
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## NORTHWESTERN DIVISION

| | | |
|---|---|---|
| **JOHN SMITH,** | ) | |
| **Plaintiff,** | ) | **CIVIL ACTION NO.** |
| | ) | |
| **v.** | ) | |
| | ) | |
| **THE BUCKLE, INC.** | ) | |
| **Defendant.** | ) | _____ |
| | ) | |

## COMPLAINT

## I.  INTRODUCTION

Plaintiff, John Smith, files this Title III, ADA action, pursuant to 42 U.S.C. §12181, <u>et. seq.</u> In Count One of the Complaint, Plaintiff seeks to enjoin the Defendant to remove architectural barriers. In Count Two, Plaintiff seeks to enjoin Defendant to maintain practices, policies, and procedures necessary to maintain the premises free of architectural barriers both now and once the barriers are removed. In Count Three, Plaintiff seeks to enjoin the Defendant's use of the premises to provide full and equal enjoyment of the premises to the disabled. Counts Two and Three seek independent relief in addition to the removal of architectural barriers. Count Four seeks to enjoin Defendant's failure to design and construct the facility to ADA compliance.

## JURISDICTION, PARTIES, AND ARTICLE III STANDING

1. Because this is an action for declaratory and injunctive relief pursuant to Title III of the Americans with Disabilities Act, 42 U.S.C. §12181, et. seq., (hereinafter referred to as the "ADA") and its implementing regulations, this Court is vested with original jurisdiction under 28 U.S.C. §1331 and §1343.

2. Venue is proper in this Court, the United States District Court for the Northern District of Alabama pursuant to Title 28, U.S.C. §1391 and the Local Rules of the United States District Court for the Northern District of Alabama.

3. Plaintiff, John Smith, was diagnosed with diabetes forty-one years ago. As a result of his diabetes, Mr. Smith consequently had a double amputation, losing both of his legs. Mr. Smith requires a wheelchair for mobility as a result of these amputations. The extent of Mr. Smith's physical problems limits his ability to care for himself, perform manual tasks, walk, stand, lift, bend, and work, all of which are major life activities pursuant to 42 U.S.C. § 12102 (2) (A). Mr. Smith is, accordingly, disabled pursuant to the Americans with Disabilities Act, in that he suffers a physical impairment

substantially limiting one or more major life activities. 42 U.S.C. § 12102; See also, 28 C.F.R. § 36.104.

4.  Defendant, The Buckle, Inc., (hereinafter "Buckle"), is a corporation that is both registered to conduct business and is conducting business within the State of Alabama sufficient to create both general and specific in personam jurisdiction. Upon information and belief, The Buckle, Inc., "operates" and "leases" the Buckle retail store located at 2801 Memorial Pkwy SW #281, Huntsville, AL 35801. 42 U.S.C. § 12182. The Buckle retail store is a commercial facility in that the unit is intended for nonresidential use and affects commerce. 42 U.S.C. § 12181(2)((A). Moreover, the retail store provides a unique specialty store experience with merchandise that is better-priced, casual apparel, footwear, and accessories, which includes but is not limited to denims, tops, sportswear, outerwear, and other brand name fashionable trends to the public, which qualifies Buckle as a place of public accommodation pursuant to 42 U.S.C. § 12181(7).

5.  All events giving rise to this lawsuit occurred in the Northern District of Alabama and the Defendant is a citizen thereof.

**6.**   Plaintiff, John Smith travels to Huntsville because he enjoys accompanying his wife while they shop. Mr. Smith enjoys going to Huntsville to eat out, shop, socialize and enjoy the atmosphere. Mr. Smith specifically enjoys shopping at the Buckle retail store for its better-priced fashionable apparel. Mr. Smith intends to continue going to Buckle because he enjoys the unique specialty store experience with merchandise that is better-priced, casual apparel, footwear, and accessories, which includes but is not limited to denims, tops, sportswear, outerwear, and other brand name fashionable trends Buckle offers. Mr. Smith will return not only to shop at Buckle, but also to confirm compliance with the ADA by Buckle. Mr. Smith does not know exactly when he will go back to Buckle, because he has not planned out every shopping trip for the rest of his life. Such specific planning is not necessary to invoke the ADA.  See, e.g. _Parr v.  L & L Drive Inn Restaurant_ 96 F. Supp.2d 1065, 1079 (D. Haw 2000) and _Segal v. Rickey's Restaurant and Lounge, Inc_. No. 11-61766-cn, (S.D. Fla 2012) ("_Specification as to date and time of return to this public accommodation is impossible due to the nature of the event. Fast food patrons visit such restaurants at the spur of the_

*moment*".). Mr. Smith definitely intends to return to Buckle, even after all ADA Title III violations are remediated.

7.  Because of the barriers described below in paragraph 19 and throughout the Complaint, Plaintiff has been denied full and equal enjoyment of the Defendant's premises on the basis of his disabilities.

8.  Plaintiff accordingly, has Article III standing to pursue this case because (1) he is disabled, pursuant to the statutory and regulatory definition; (2) the Defendant's retail store is a place of public accommodation, pursuant to the statutory and regulatory definition; (3) he has suffered a concrete and particularized injury by being denied access to the store by architectural barriers, by being denied access by the Defendant's practices described throughout this Complaint, and by Defendant's denial of the use of the store for his full and equal enjoyment as the able-bodied, as described throughout the Complaint, and (4) because of these injuries there exists a genuine threat of imminent future injury, as described in paragraph 17.

## II.    PLAINTIFF'S CLAIMS

### ADA, Title III

9.    On or about July 26, 1990, Congress enacted Title III of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §12181 et.seq. Commercial enterprises were provided one and a half years from enactment of the statute to implement its requirements. The effective date of Title III of the ADA was January 26, 1992. (42 U.S.C. §12181; 20 C.F.R. §36.508 (A); *See also*, § 36.304).

10.    Pursuant to 42 U.S.C. § 12181(7) and 28 C.F.R. § 36.104, the Defendant's establishment is a place of public accommodation in that it is a retail store providing a unique specialty store experience with merchandise that is better-priced, casual apparel, footwear, and accessories, which includes but is not limited to denims, tops, sportswear, outerwear, and other brand name fashionable trends to the public. Accordingly, it is covered by the ADA and must comply with the Act.

# COUNT ONE
# VIOLATION OF THE AMERICANS WITH DISABILITIES ACT, TITLE III
## 42 U.S.C. § 12182(b)(2)(A)(iv)
### *(Architectural Barriers)*

## Defendant's Existing Facility Is Subject to the 2010 ADA Design Standards for the Portions of the Facility Addressed in This Complaint

11. Plaintiff is informed and believes based on publicly available information that the shopping center in which the Buckle retail store located at 2801 Memorial Pkwy SW #281, Huntsville, AL, is located was originally constructed in 2002 with alterations and/or improvements made to the Buckle retail space on or after March 20, 2012.

12. The ADA was enacted requiring that facilities constructed prior to January 26, 1992, are considered an "existing" "facility, such that those facilities must remove architectural barriers where such removal is readily achievable. 42 U.S.C. § 12182(b)(2)(A)(iv). All "alterations" made to existing facilities after January 26, 1992, and all "new construction" after January 26, 1993, must be *readily accessible to and usable by individuals with disabilities*, including *individuals who use wheelchairs*. 42 U.S.C. § 12183(a) and (b). 28 *C.F.R.* § 36.402. "Readily accessible to and usable by. . ." is the "new

construction" standard, which requires compliance with the Department of Justice standards. 42 U.S.C. § 12183(a)(1); 28 *C.F.R.* § 36.406. The only defense for failing to provide readily accessible and usable buildings constructed under the "new construction" standards is if the design and construction of the building to be readily accessible and usable is "structurally impracticable". 42 U.S.C. § 12183(a)(1). The "structural impracticability" defense applies only in rare circumstances of extraordinary terrain. 28 *C.F.R.* § 36.401(c). "Readily accessible to and usable by. . ." is also the "alterations" standard. 42 U.S.C. § 12183(a)(2). "Alterations" must be made to the maximum extent feasible. 42 U.S.C. § 12183(a)(2); 28 *C.F.R.* § 36.402. An alteration is a change to a place of public accommodation or commercial facility that affects or could affect the usability of the facility or any part thereof. 28 *C.F.R.* § 36.402(b).

13. New construction and alterations must comply with either the Justice Department's 1991 Standards for Accessible Design, or the 2010 Standards for Accessible Design. 28 *C.F.R.* § 36.406 establishes whether the 1991 Standards for Accessible Design or 2010 Standards for Accessible Design apply: New construction and alterations subject to §§ 36.401 or 36.402 shall comply with the 1991

Standards if the date when the last application for a building permit or permit extension is certified to be complete by a State, county, or local government is before September 15, 2010, or if no permit is required, if the start of physical construction or alterations occurs before September 15, 2010. 28 *C.F.R.* § 36.406(a)(1). New construction and alterations subject to §§ 36.401 or 36.402 shall comply either with the 1991 Standards or with the 2010 Standards if the date when the last application for a building permit or permit extension is certified to be complete by a State, county, or local government is on or after September 15, 2010, and before March 15, 2012, or if no permit is required, if the start of physical construction or alterations occurs on or after September 15, 2010, and before March 15, 2012. 28 *C.F.R.* § 36.406(a)(2). New construction and alterations subject to §§ 36.401 or 36.402 shall comply with the 2010 Standards if the date when the last application for a building permit or permit extension is certified to be complete by a State, county, or local government is on or after March 15, 2012, or if no permit is required, if the start of physical construction or alterations occurs on or after March 15, 2012. *Where the facility does not comply with the 1991 Standards, the 2010 Standards are*

*applicable*. See 28 C.F.R. § 36.406(5)(ii) which states, "Newly constructed or altered facilities or elements covered by §§ 36.401 or 36.402 that were constructed or altered before March 15, 2012 and that do not comply with the 1991 Standards shall, on or after March 15, 2012, be made accessible in accordance with the 2010 Standards."

14. For the architectural barriers at issue in this case, the 2010 Standards for Accessible Design are applicable.

## Plaintiff's Concrete and Particularized Standing to Pursue an Injunction

15.  The Defendant has discriminated, and continues to discriminate, against Plaintiff, and others who are similarly situated, by denying full and equal access to, and full and equal enjoyment of goods, services, facilities, privileges, advantages and/or accommodations at the Buckle retail store in derogation of 42 U.S.C. § 12101 et. seq., and as prohibited by 42 U.S.C. § 12182 et-seq. As "new construction", the building must be readily accessible to and usable by individuals with disabilities. 42 U.S.C. § 12183 (a) and (b). Defendant's failure to remove the existing barriers thus violates 42 U.S.C. § 12182(b)(2)(A)(iv), which requires removal of

architectural barriers.

16. As described above, prior to the filing of this lawsuit, Plaintiff was denied full and safe access to all of the benefits, accommodations and services offered to individuals without disabilities within and about the Defendant's facility. Plaintiff's access was inhibited by each of the described architectural barriers detailed in this Complaint which remain at the facility in violation of the ADA. Because of the foregoing, Plaintiff has suffered an injury-in-fact in precisely the manner and form that the ADA was enacted to guard against.

17. Plaintiff has definite plans to return to the Buckle retail store in the future, as described in paragraph 6. Plaintiff will return to Buckle within the next few months not only to shop and enjoy the unique specialty store experience with merchandise that is better-priced, casual apparel, footwear, and accessories, which includes but is not limited to denims, tops, sportswear, outerwear, and other brand name fashionable trends, but also to see if Buckle has repaired the barriers, and changed its practices and procedures. Plaintiff will continue to do so even when the Buckle retail store is repaired.

Absent remedial action by Defendant, Plaintiff will continue to encounter the architectural barriers, and the discriminatory policies, practices, and procedures described herein and as a result, be discriminated against by Defendant on the basis of his disabilities. The Eleventh Circuit, held in *Houston v. Marod Supermarkets*, 733 F.3d 1323 (11th Cir. 2013), that when architectural barriers have not been remedied "*there is a 100% likelihood that plaintiff… will suffer the alleged injury again when he returns to the store.*" Additionally, "*[A]n alleged constitutional infringement will often alone constitute irreparable harm.*" *United States v. Arizona*, 2011 WL Case 1:11-cv-01804-TWT at \*19; see also *KH Outdoor, LLC v. City of Trussville*, 458 F.3d 1261, 1271-72 (11th Cir. 2006) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976) (*finding "[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury."*)) Due to the definiteness of Plaintiff's future plans to continue visiting the subject facility, there exists a genuine threat of imminent future injury.

**Architectural Barriers**

18. Pursuant to the mandates of 42 U.S.C. § 12134(a), on July 26, 1991, the Department of Justice, Office of the Attorney General, promulgated Federal Regulations to implement the requirements of the ADA. 28 C.F.R. Part 36.

19. Plaintiff has been throughout the store, from the entrance to and throughout the retail areas; to the check-out service counter, to the dressing rooms, throughout circulation paths and accessible routes, and service areas, paths of travel, and in particular but not limited to all of which is more specifically described below. Defendant's facility located at 2801 Memorial Pkwy SW #281, Huntsville, AL, more commonly known as "Buckle", violates the ADA in particular but not limited to:

**CHECK-OUT SERVICE COUNTER**

a) Buckle provides a check-out counter for able-bodied individuals, but fails to afford non-able-bodied individuals the same opportunity to participate in or benefit from, a good, service, facility, privilege, advantage, or accommodation that is equal to the experience afforded to individuals without disabilities,

which includes but is not limited to the following failures of Defendant:

A.   The check-out counter fails to provide a minimum of 36 inches of clear counter surface for individuals with disabilities to be able to make a parallel approach to the counter;

    i.   There is not 36 inches of clear counter surface that is measured a maximum of 36 inches above the finished floor;

    ii.   There is not clear floor space that is at least 48 inches long x 30 inches wide provided adjacent to the 36-inch minimum length of counter;

B.   The existing check-out counter fails to provide a minimum of 30 inches of clear counter surface for individuals with disabilities to be able to make a forward approach to the counter;

    i.   There is not 30 inches of clear counter surface that is measured a maximum of 36 inches

above the finished floor positioned for a forward approach;

    **ii.**    There is no knee and toe clearance provided under the 30 inches of clear counter surface that is measured a maximum of 36 inches above the finished floor positioned for a forward approach;

    **iii.**    There is no clear floor space that is at least 30 inches wide x 48 inches long provided underneath the 30 inches of clear counter surface that is measured a maximum of 36 inches above the finished floor positioned for a forward approach;

**C.** There is no ADA accessible portion of the check-out counter that extends the same depth as the non-accessible portion of the check-out counter;

**D.** There is no ADA accessible check writing surface provided 28 inches minimum and 34 inches maximum

above the finished floor that allows for the required knee and toe clearance;

E.  Buckle provides a point of sale machine to transact business at the check-out counter for able-bodied individuals, but fails to provide the same level of service to non-able-bodied individuals by providing a point of sale machine at an accessible portion of the counter;

F.  The current practice at Buckle is to place merchandise within the required clear counter surface;

G.  The current practice at Buckle is to locate merchandise display tables within the required clear floor space at the sales/service counter;

H.  Buckle fails to maintain the accessible features at the sales/service counter that are required to be readily accessible to and usable by individuals with disabilities;

## ACCESSIBLE ROUTE

b)  Buckle provides an accessible route to and throughout the shopping retail aisles throughout the store for able-bodied individuals, but fails to provide an ADA accessible route to and

throughout the shopping retail aisles for individuals with disabilities which prohibits individuals with disabilities from the full and equal opportunity to access the goods and services at the Buckle retail store:

    i. Throughout the accessible route there is merchandise that is for sale to the public that obstructs the required 36 inches of clear floor space on the purported accessible route;

    ii. The current practice at Buckle is to maintain merchandise within the required clear floor or ground space of the purported accessible route;

    iii. Buckle's use of its merchandise display racks are positioned in a way that prohibits individuals with disabilities from being afforded the opportunity to maneuver to and throughout the retail shopping aisles and turning to maneuver throughout the adjacent shopping aisle;

    iv. Buckle fails to have or otherwise fails to enforce its policies, practices, or procedures on maintaining in operable working condition the features of the purported

accessible route to and throughout the retail store shopping aisles so that the goods and services are readily accessible to and usable by individuals with disabilities;

v. Buckle has ineffective policies, practices, or procedures that ensures the purported accessible route is readily accessible to and usable by individuals with disabilities so that no individual with a disability is excluded, denied services, segregated, or otherwise treated differently than other individuals without disabilities;

vi. Buckle fails to maintain the accessible features of the purported accessible route so that it is readily accessible to and usable by individuals with disabilities;

## DRESSING ROOMS

c) Buckle provides dressing rooms for able-bodied individuals, but fails to afford non-able-bodied individuals the same opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is equal to that shopping experience afforded to other individuals without

disabilities, which includes but is not limited to the following failures of Defendant:

    i. The existing purported accessible dressing is used as a storage closet and is otherwise not maintained to be readily accessible to and useable by individuals with disabilities;

    ii. The existing purported accessible dressing room fails to conform to the ADA Standards for Accessible Design;

    iii. There is no informational signage directing disabled individuals to the accessible dressing room;

    iv. There is no signage displaying the International Symbol of Accessibility indicating an interior space within the dressing room as ADA accessible;

    v. Buckle fails to provide at least five percent (5%), but no less than one in each cluster, ADA accessible dressing rooms;

    vi. There is not at least one ADA accessible dressing room that provides the required clear floor space;

vii. There is not at least one ADA accessible dressing room that provides a bench with a back support and/or is affixed to the wall;

viii. The dressing room seating fails to provide the required clear floor or ground space at the end of the bench for a wheelchair user to transfer onto the bench;

ix. There is not at least one dressing room bench that meets the minimum required length of 42 inches;

x. There is not at least one ADA accessible dressing room that has a bench seat that is 20 inches deep minimum and 24 inches deep maximum;

xi. There is not at least one ADA accessible dressing room that has a bench that is 17 inches minimum and 19 inches maximum above the finished floor;

xii. There is not at least one ADA accessible dressing room in each cluster that has the required t-shaped turning space which includes but is not limited to not providing the required 30x48 inches of clear floor space beyond the arc of the door swing;

    **xiii.** There is not at least one existing ADA accessible dressing room that provides the required perpendicular clear floor space at the door to exit the dressing room;

    **xiv.** The clothing hooks exceed the maximum allowed height of 48 inches above the finished floor;

    **xv.** Buckle fails to maintain the accessible features of the dressing room that are required to be readily accessible to and usable by individuals with disabilities;

**d)** Buckle fails to have or otherwise fails to enforce its policies, practices, or procedures on maintaining in operable working condition the features of the purported accessible route to and throughout the retail store to the dressing rooms so that the goods and services are readily accessible to and usable by individuals with disabilities;

**e)** Buckle has ineffective policies, practices, or procedures that ensures the purported accessible route is readily accessible to and usable by individuals with disabilities so that no individual with a disability is excluded, denied services, segregated, or otherwise treated differently than other individuals without disabilities;

**f)** Buckle fails to maintain the accessible features of the purported accessible route to the dressing room so that it is readily accessible to and usable by individuals with disabilities;

## SHOE AREA SEATING

**g)** Buckle provides seating for able-bodied individuals to sit and lounge while shopping, but fails to afford non-able-bodied individuals the same opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is equal to that shopping experience afforded to other individuals without disabilities;

**h)** Buckle provides seating for able-bodied individuals to sit and try on shoes, but fails to provide that same level of service to individuals with disabilities, which includes but is not limited to the following failures of Defendant:

**i.** The shoe area seating fails to provide the required clear floor or ground space at the end of the bench for a wheelchair user to transfer onto the bench;

**ii.** There is not at least one ADA accessible bench that provides a back support and/or is affixed to the wall;

      **iii.** There is not at least one accessible bench that is 20 inches deep minimum and 24 inches deep maximum;

      **iv.** There is not at least one accessible bench that is 17 inches minimum and 19 inches maximum above the finished floor;

      **v.** There is not at least one accessible bench that is measured 42 inches long minimum;

      **vi.** Buckle affords individuals without disabilities the opportunity to try on shoes while sitting in a bench which is a different or separate benefit and service Buckle affords to individuals without disabilities in that disabled individuals have no bench to sit in and therefore cannot try on shoes prior to purchasing;

**20.** To date, the barriers to access and other violations of the ADA still exist and have not been remedied or altered in such a way as to effectuate compliance with the provisions of the ADA.

**21.** Plaintiff has been obligated to retain the undersigned counsel for the filing and prosecution of this action. He is entitled to have his reasonable attorney's fees, costs and expenses paid by the Defendant pursuant to 42 U.S.C. §12205.

22. Pursuant to 42 U.S.C. §12188, this Court is vested with the authority to grant Plaintiff's injunctive relief, including an Order to alter the discriminating facility to make it readily accessible to, and useable by, individuals with disabilities to the extent required by the ADA, and closing the facility until the requisite modifications are completed, and to further order the Defendant to modify its policies, practices, and procedures, to provide equal use of its facility, services and benefits to disabled individuals.

## COUNT TWO
## VIOLATION OF THE AMERICANS WITH DISABILITIES ACT, TITLE III
## 42 U.S.C. § 12182(b)(2)(A)(ii)
### *(Practices, procedures, and policies denying equal benefits)*

**ADA Title III Prohibits Other Discrimination in Addition to Architectural Barriers**

23. Plaintiff re-alleges paragraphs 1-22 above.

24. The ADA, Title III, provides a private right of action for "any person who is being subjected to discrimination on the basis of disability in violation of" Title III. 42 U.S.C. § 12182(a)(1) (emphasis added).

25. The ADA, Title III, specifically makes it unlawful to provide individuals with disabilities with an "unequal benefit," and to

relegate individuals with disabilities to a "different or separate" benefit. 42 U.S.C. §§ 12182(b)(1)(A))(ii)-(iii); 28 C.F.R. § 36.202(b)-(c). In other words, the disabled must receive equal benefits as the nondisabled. Further, 28 C.F.R. § 302(b) requires that goods, services, and accommodations be provided to individuals with disabilities in "the most integrated setting appropriate." 42 U.S.C. § 12182(b)(1)(B); 28 C.F.R. § 36.203(a). Similarly, the Preamble in addition to recognizing that persons who use wheelchairs and mobility aids have been forced to sit apart from family and friends, also recognizes that persons who use wheelchairs and mobility aids historically have been provided "segregated accommodations" compared to non-disabled individuals, thus relegating persons who use wheelchairs "to the status of second-class citizens." See 28 C.F.R. pt. 36, App. B, at 631-633, 651 (2000) (discussion of §§ 36.308, 36.203).

26. Congress enacted the ADA in light of its findings that "individuals with disabilities continually encounter various forms of discrimination, including outright intentional exclusion, the discriminatory effects of architectural, transportation, and communication barriers, overprotective rules and policies, failure to

make modifications to existing facilities and practices, exclusionary qualification standards and criteria, segregation, and relegation to lesser services, programs, activities, benefits, jobs, or other opportunities." 42 U.S.C. § 12101(a)(5).

27. To address this broad range of discrimination in the context of public accommodations, Congress enacted ADA, Title III, which provides in part: "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. 12182.

28. By its clear text, ADA, Title III requires a public accommodation to provide individuals with disabilities *more than simple physical access.* Removal of architectural barriers as required by Count One of this Complaint is but one component of compliance with ADA, Title III. Congress recognized that "individuals with disabilities continually encounter various forms of discrimination" including not only barriers to physical access, but also other forms of

exclusion and relegation to lesser services, programs, activities, benefits, jobs, or other opportunities. 42 U.S.C. 12101(a)(5); see also H.R. Rep. No. 485, Pt. 2, 101st Cong., 2d Sess. 35-36 (1990) ("lack of physical access to facilities" was only one of several "major areas of discrimination that need to be addressed"); H.R. Rep. No. 485, Pt. 3, 101st Cong., 2d Sess. 54 (1990) ("It is not sufficient to only make facilities accessible and usable; this title prohibits, as well, discrimination in the provision of programs and activities conducted by the public accommodation.").

29. For that reason, the Act applies not only to barriers to physical access to places of public accommodation, but also to any policy, practice, or procedure that operates to deprive or diminish disabled individuals' full and equal enjoyment of the privileges and services offered by the public accommodation to the public. 42 U.S.C. § 12182. Thus, a public accommodation may not have a policy, practice or procedure that excludes individuals with disabilities from services. 42 U.S.C. § 12182(b)(2)(A)(ii). The Eleventh Circuit held in Rendon v. Valleycrest Prod., Ltd. 294 F.3d 1279, (11th Cir. 2002) that:

*"A reading of the plain and unambiguous statutory language at issue reveals that the definition of discrimination provided in Title III covers both <u>tangible barriers</u> (emphasis added), that is, physical and architectural barriers that would prevent a disabled person from entering an accommodation's facilities and accessing its goods, services and privileges, see 42 U.S.C. § 12182(b)(2)(A)(iv), and <u>intangible barriers</u> (emphasis added), such as eligibility requirements and screening rules or discriminatory policies and procedures that restrict a disabled person's ability to enjoy the defendant entity's goods, services and privileges."*

## Defendant's Failed Practices and Lack of Policies Are Discriminatory

**30.** Pursuant to 42 U.S.C. § 12182(b)(2)(A)(ii) discrimination includes:

*"a failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages, or accommodations."*

**31.** Accordingly, a place of public accommodation must modify a policy or practice that has the consequence of, or tends to deny, access to goods or services to the disabled.

**32.** As detailed below, Defendant has failed to make reasonable modifications in its policies, practices, and procedures that are

necessary to afford its goods, services, facilities, privileges, advantages, or accommodations to individuals with restricted mobility. By failing to take such efforts that may be necessary to ensure that no individual with a disability is excluded, Defendant denied services, segregated or otherwise treated Plaintiff differently than other individuals who are not disabled. Pursuant to 42 U.S.C. § 12182(b)(2)(A), Defendant has discriminated against Plaintiff. Defendant will continue that discrimination forever until enjoined as Plaintiff requests. The discrimination is described more particularly in the following paragraphs.

33. Defendant either has no policies, practices, and procedures to remove architectural barriers or else does not abide by them. The rampant architectural barriers previously identified in Count One establish that Defendant has failed to create, adopt, and/or implement ADA Title III compliance policies, procedures, and practices as to architectural barriers.

34. Defendant's use of its retail store, and its practices at the Buckle retail store located at 2801 Memorial Pkwy SW #281, Huntsville, AL, literally create barriers and in so doing deny Plaintiff the full

and equal enjoyment of the retail store. Those practices include:

a) Defendant makes the check-out counter inaccessible for use by the disabled by failing to provide either a parallel or a forward approach to the counter, which means Mr. Smith cannot fully and equally use the counter to check out in the way the non-disabled do, because the non-disabled have a counter they can use to checkout;

b) Point of sale machines at the check-out counter are located so as to be inaccessible, which denies Mr. Smith the ability to equally use those machines as the non-disabled, who can independently use the point of sale machines to pay for their purchases, though he cannot;

c) Defendant fails to provide an accessible route to and throughout the shopping retail aisles throughout the store, which means that Mr. Smith cannot travel and move throughout the shopping retail aisles the way non-disabled people can. Accordingly, he cannot fully and equally use the store as the non-disabled can;

d) Defendant fails to provide an accessible route to the dressing room by locating merchandise display racks within the

required clear floor space on the accessible route, which means Mr. Smith cannot enter and/or exit the dressing room area to try on clothes the way non-disabled people can. Accordingly, he cannot fully and equally use the store as the non-disabled can;

**e)** Defendant fails to provide an accessible dressing room to Plaintiff and other disabled individuals, so that Mr. Smith cannot try on clothes or move into and throughout the dressing room, which the able-bodied can freely do;

**f)** Defendant makes its accessible dressing room inaccessible for use by the disabled by using it as a storage closet, so that Mr. Smith is required to be crammed in a non-accessible room and otherwise be denied the opportunity to try on clothes;

**g)** Defendant fails to provide signage in the dressing room area displaying the International Symbol of Accessibility informing and directing disabled individuals to the ADA accessible dressing room, which means that Buckle does not even claim to have an ADA accessible dressing room and that Mr. Smith has to use trial and error to decide which dressing room he can use, if he can use any at all, unlike the non-

disabled who can freely use any dressing room they would like;

h) Defendant makes merchandise display tables throughout the store inaccessible for use by the disabled by placing items available for purchase on inaccessible tables where disabled individuals cannot independently access the items in the same manner as the non-disabled, so that Mr. Smith cannot fully and equally shop like the able-bodied can;

i) Defendant makes seating in the shoe area inaccessible for use by the disabled by failing to provide a bench that conforms to the ADA Standards for Accessible Design, which means Mr. Smith cannot fully and equally use the bench to sit and try on shoes before purchasing them, as the able-bodied can;

j) Defendant makes the bench seating by the check-out service counter inaccessible for use by the disabled by failing to provide a bench that conforms to the ADA Standards for Accessible Design, which means Mr. Smith cannot fully and equally use the bench to sit and relax while shopping, as the able-bodied can;

    **k)** Defendant uses the accessible counter surface as a sales area, so that Mr. Smith does not have a counter surface to use, unlike the able-bodied who do have usable counter surfaces;

    **l)** Defendant's policies, practices, and procedures are conducted without regard to disabled individuals;

**35.** As the continuing architectural barriers and the failure to provide full and equal use of the facility establishes, Defendant has no policies, practices, or procedures, or else it has failed to implement them, to ensure that any removal of architectural barriers is permanent. 42 U.S.C. § 12182(b)(2)(a)(iv) and (v).

**36.** As the continuing architectural barriers and the failure to provide full and equal use of the facility establishes, Defendant's existing practice is both in effect and/or explicitly to remediate ADA Title III architectural barriers only upon demand by the disabled.

**37.** As the continuing architectural barriers and the failure to provide full and equal use of the facility establishes, Defendant has no policies, practices, and procedures or else it failed to create, implement and maintain policies and procedures to ensure individuals with disabilities are able to have the same experience at

its retail store as individuals without disabilities, 42 U.S.C. 12182(b)(1)(A), and in particular the opportunity to have full and equal access to all of the goods, services, privileges, advantages, or accommodations of the Buckle retail store, as described above in detail.

38. As the continuing architectural barriers and the failure to provide full and equal use of the facility establishes, Defendant has failed to create, implement, and maintain a policy of complying with ADA building design standards and regulations.

39. To date, the Defendant's discriminating policies, practices, and/or procedures have not been reasonably modified to afford goods, services, facilities, privileges, advantages, or other accommodations to individuals with disabilities.

40. A reasonable modification in the policies, practices, and procedures described above will not fundamentally alter the nature of such goods, services, facilities, privileges, advantages, and accommodations. The Plaintiff hereby demands that Defendant both create and adopt a corporate practice and policy that Defendant (1) will fully comply with Title III, ADA, and all its implementing

regulations so that architectural barriers identified above are permanently removed from Defendant's retail store consistent with the ADA; (2) Defendant will provide the disabled, including those with mobility limitations full and equal use and enjoyment of the Buckle retail store; (3) Defendant will modify its practice of making ADA Title III architectural barrier remediations only upon demand by the disabled.

41. As pled above, The Buckle, Inc. "operates" and "leases" the Buckle retail store located at 2801 Memorial Pkwy SW #281, Huntsville, AL, and is therefore, pursuant to 42 U.S.C. § 12182, responsible for creating, implementing, and maintaining policies, practices and procedures, as alleged above.

42. The ADA is over twenty-five (25) years old. Defendant knows it must comply with the ADA Title III. The ADA Title III requires modifications in policies, practices, and procedures to comply with it, as pled above in the statute. 42 U.S.C. §12182(b)(2)(A)(ii).

43. By this Complaint, Plaintiff provides sufficient notice of his demands for an alteration in Defendant's policies, practices, and procedures.

44. Plaintiff has been obligated to retain the undersigned counsel for the

filing and prosecution of this action. He is entitled to have his reasonable attorney's fees, costs and expenses paid by the Defendant pursuant to 42 U.S.C. § 12205.

45. Pursuant to 42 U.S.C. § 12188 this Court is authorized to enjoin these illegal policies, practices, and procedures.

## COUNT THREE
## VIOLATION OF THE AMERICANS WITH DISABILITIES ACT
### *Denial of Full and Equal Enjoyment*

46. Plaintiff re-alleges paragraphs 1-45 above.

47. 42 U.S.C. § 12182(a) provides:

> *"No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation."*

48. Congress enacted the ADA upon finding, among other things, that "society has tended to isolate and segregate individuals with disabilities" and that such forms for discrimination continue to be a "serious and pervasive social problem." 42 U.S.C. § 12101(a)(2).

49. Congress also found that: "*individuals with disabilities continually encounter various forms of discrimination, including outright intentional*

*exclusion, the discriminatory effects of architectural, transportation, and communication barriers, overprotective rules and policies, failure to make modifications to existing facilities and practices, exclusionary qualification standards and criteria, segregation, and relegation to lesser services, programs, activities, benefits, jobs, or other opportunities,* 42 U.S.C. § 12101(a)(5); "*the nation's proper goals regarding individuals with disabilities are to assure equality of opportunity, full participation, independent living, and economic self-sufficiency for such individuals*;" 42 U.S.C. § 12101(a)(7). Congress even found that: "*the continuing existence of unfair and unnecessary discrimination and prejudice denies people with disabilities the opportunity to compete on an equal basis and to pursue those opportunities for which our free society is justifiably famous, and costs the United States billions of dollars in unnecessary expenses resulting from dependency and nonproductivity.*" 42 U.S.C. § 12101(a)(8).

50. In response to these findings, Congress explicitly stated that the purpose of the ADA is to provide "a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities" and "clear, strong, consistent, enforceable standards addressed discrimination against individuals

with disabilities." 42 U.S.C. § 12101(b)(1)-(2).

51. The ADA provides, inter alia, that it is discriminatory to subject an individual or class of individuals on the basis of a disability "to a denial of the opportunity of the individual or class to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodations of an entity." 42 U.S.C. § 12182(a)(i).

52. The ADA further provides that it is discriminatory "to afford an individual or class of individuals, on the basis of a disability ... with the opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is not equal to that afforded to other individuals." 42 U.S.C. § 12182(a)(ii).

53. Congress enacted the ADA in light of its findings that "individuals with disabilities continually encounter various forms of discrimination, including outright intentional exclusion, the discriminatory effects of architectural, transportation, and communication barriers, overprotective rules and policies, failure to make modifications to existing facilities and practices, exclusionary qualification standards and criteria, segregation, and relegation to lesser services, programs, activities, benefits, jobs, or other

opportunities." 42 U.S.C. 12101(a)(5). Defendant's acts and omissions alleged herein are in violation of the ADA, 42 U.S.C. §§ 12101, et seq., and the regulations promulgated thereunder.

54. To address this *broad* range of discrimination in the context of public accommodations, Congress enacted Title III, which by its clear text, requires a public accommodation to provide individuals with disabilities more than simple physical access. Congress recognized that "individuals with disabilities continually encounter *various forms of discrimination"* including not only barriers to physical access, but also other forms of exclusion and *relegation to lesser services, programs, activities, benefits, jobs, or other opportunities.* 42 U.S.C. 12101(a)(5); see also H.R. Rep. No. 485, Pt. 2, 101st Cong., 2d Sess. 35-36 (1990) ("lack of physical access to facilities" was only one of several "major areas of discrimination that need to be addressed"); H.R. Rep. No. 485, Pt. 3, 101st Cong., 2d Sess. 54 (1990) ("It is not sufficient to only make facilities accessible and usable; this title prohibits, as well, discrimination in the provision of programs and activities conducted by the public accommodation.").

55. For that reason, the Act applies not only to barriers to physical access to business locations, but also to any policy, practice, or procedure that operates to deprive or diminish disabled individuals' *full and equal enjoyment* of the privileges and *services* offered by the public accommodation to the public. 42 U.S.C. 12182. Thus, a public accommodation may not have a policy, practice or procedure that excludes individuals with disabilities from services. 42 U.S.C. § 12182(b)(1)(A)(i).

56. The keystone for this analysis is Defendant *must start by considering how its facilities are used by non-disabled guests and then take reasonable steps to provide disabled guests with a like experience.* Spector v. Norwegian Cruise Line Ltd., 545 U.S. 119, 128–29, 125 S.Ct. 2169, 162 L . E d . 2d 97 (2005) See also, *Baughman v. Walt Disney World Company*, 685 F.3D 1131, 1135 (9th Cir. 2012).

57. Plaintiff, John Smith, was denied full and equal access to the Buckle retail store. Plaintiff specifically and definitely wants to return to the Defendant's retail store to enjoy the unique specialty store experience with merchandise that is better-priced, casual apparel, footwear, and accessories, which includes but is not limited to

denims, tops, sportswear, outerwear, and other brand name fashionable trends. More specifically, Plaintiff wants to be afforded the same level of service that is offered to non-disabled individuals and which Defendant has failed to provide to Plaintiff as follows: Defendant failed to provide an accessible route to and throughout the store and shopping retail aisles for disabled individuals, which means that unlike the non-disabled, the disabled must struggle to move throughout the store and retail aisles, if they can make it at all; Defendant failed to provide an accessible route to and throughout the dressing rooms for disabled individuals, which means that unlike the non-disabled, the disabled must struggle just to get into and out of the dressing rooms independently, if they can make it at all; Defendant failed to provide an accessible dressing room that is readily accessible to and usable by Plaintiff and other disabled individuals; Defendant failed to provide Plaintiff that same experience that non-disabled individuals have when shopping at Buckle; Defendant failed to provide the same experience by making it nearly impossible for the disabled to access the sales/service counter in the store, while the non-disabled can independently access the counter and services provided at the counter; Defendant

failed to provide Plaintiff that same experience by using the purported accessible dressing room as a storage closet and forcing Plaintiff and other disabled individuals to cram into a non-accessible dressing room, otherwise denying the disabled the opportunity to try on clothes; Defendant failed to provide the same experience by making it nearly impossible for the disabled to be able to independently access items maintained on the merchandise display tables, while the non-disabled can independently access the merchandise on the merchandise display tables; Defendant failed to provide the same experience by failing to provide seating for the disabled to sit while trying on clothes in the dressing room area, trying on shoes in the shoe area, and throughout other areas in the store, while the non-disabled can fully use the seating; Defendant failed to maintain the accessible signage of the Buckle retail store so that the disabled, unlike the non-disabled, do not even know what route and what paths of travel  are usable by individuals with disabilities; Defendant's failure to identify by signage what is accessible and what is not accessible makes the disabled inferior, segregated or otherwise treated differently, because unlike the non-disabled, disabled individuals have to guess and speculate and

determine by trial and error what facilities can even be used by them; Defendant's use of the accessible counter surface as a merchandise sales table denies the disabled a counter surface to use, unlike the able-bodied, who have usable counter surfaces; and all the foregoing failures by Defendant inhibited Plaintiff from having the same experience that non-disabled individuals have when shopping at the Buckle retail store.

58.  In its Preamble to the title III regulation, the Department of Justice recognized that mobility impaired persons including persons in wheelchairs should have the same opportunities to enjoy the goods and services and other similar events of public accommodation with their families and friends, just as other non-disabled individuals do. The DOJ further recognized that providing segregated accommodations and services relegates persons with disabilities to the status of *second-class citizens*. 28 C.F.R. pt. 36, App. B, § 36.203.

59.  The ADA specifically makes it unlawful to provide individuals with disabilities with an "unequal benefit," and to relegate individuals with disabilities to a "different or separate" benefit. 42 U.S.C. §§ 12182(b)(1)(A) )(ii)-(iii); 28 C.F.R. § 36.202(b)-(c). Further, 28

C.F.R. § 302(b) require that goods, services, and accommodations be provided to individuals with disabilities in "the most integrated setting appropriate." 42 U.S.C. § 12182(b)(1)(B); 28 C.F.R. § 36.203(a). Similarly, the Preamble in addition to recognizing that persons who use wheelchairs have been forced to sit apart from family and friends, also recognizes that persons who use wheelchairs historically have been provided "inferior seating" and "segregated accommodations" compared to non-disabled individuals, thus relegating persons who use wheelchairs "to the status of second-class citizens." See 28 C.F.R. pt. 36, App. B, at 631-633, 651 (2000) (discussion of §§ 36.308, 36.203).

60.   Thus, Defendant's "use" of the accessible features constitutes statutory discrimination in violation of the ADA, because Defendant has segregated and separated the disabled from the non-disabled individuals. "*The goal is to eradicate the invisibility of the handicapped. Separate-but-equal services do not accomplish this central goal and should be rejected.*" *H.R. Rep. No. 101-485(III), at 50, 1990 U.S.C.C.A.N at 473.* The ADA provides a "broad mandate" to "eliminate discrimination against disabled individuals, and to integrate those individuals into the economic and social mainstream

American life. *PGA Tour, Inc. v. Martin*, 532 U.S. 661, 675, 121 S.Ct.1879, 149 L.Ed.2d 904 (2001) (*quoting H.R.Rep. No. 101-485, pt. 2, p.50 (1990), reprinted in 1990 U.S.C.C.A.N. 303, 332*).

61. Defendant discriminated against Plaintiff by denying Plaintiff "full and equal enjoyment" and use of the goods, services, facilities, privileges and accommodations of the facility during each visit. Each incident of deterrence denied Plaintiff an equal "opportunity to participate in or benefit from the goods, services, facility, privilege, advantage, or accommodations" of Buckle.

62. Defendant's conduct and Defendant's unequal treatment to Plaintiff constitutes continuous violations of the ADA and absent a Court ordered injunction from doing so, Defendant will continue to treat Plaintiff and others similarly situated unequally to the status of a second-class citizen.

63. Defendant's failure to maintain the accessible features that are required to be readily accessible to and usable by individuals with disabilities constitute continuous discrimination and absent a Court ordered injunction, Defendant will continue to not maintain the required accessible features at Defendant's facility.  28 C.F.R.§

36.211(a).

**64.** Plaintiff has been obligated to retain the undersigned counsel for the filing and prosecution of this action. He is entitled to have his reasonable attorney's fees, costs and expenses paid by the Defendant pursuant to 42 U.S.C. § 12205.

**65.** Pursuant to 42 U.S.C. § 12188, this Court is authorized to enjoin these illegal acts of Defendant.

**COUNT FOUR**
**VIOLATION OF THE AMERICANS WITH DISABILITIES ACT, TITLE III**
**42 U.S.C. § 12183(a)(1)**
*(Failure to design and construct facility for ADA compliance)*

**66.** Plaintiff re-alleges paragraphs 1 – 65 above.

**67.** 42 U.S.C. § 12183(a)(1) provides:

> *[Discrimination includes] a failure to design and construct facilities for first occupancy later than 30 months after July 26, 1990, that are readily accessible to and usable by individuals with disabilities, except where an entity can demonstrate that it is structurally impracticable to meet the requirements of such subsection in accordance with standards set forth or incorporated by reference in regulations issued under this subchapter.*

68. Congress passed the ADA in part because "historically, society has tended to isolate and segregate individuals with disabilities, and such forms of discrimination ... continue to be a serious and pervasive social problem." 42 U.S.C. § 12101(a)(2). Congress found that this discrimination included "segregation and relegation to lesser services, programs, activities, benefits, jobs, or other opportunities." Id. § 12101(a)(5). In its Preamble to the title III regulation, the Department of Justice recognized that persons in wheelchairs should have the same opportunities to enjoy the goods and services and other similar events of a public accommodation with their families and friends, just as other non-disabled individuals do. The DOJ further recognized that providing segregated accommodations and services relegates persons with disabilities to the status of *second-class citizens*. 28 C.F.R. pt. 36, App. B, § 36.203.

69. To eliminate such segregation Congress enacted the requirement that facilities be "readily accessible to and usable by individuals with disabilities". This very requirement is intended to enable persons with disabilities "*to get to, enter and use a facility*." H.R. Rep. No. 101-485(III), at 499-500 (1990). It requires "a high degree of convenient

accessibility," id., as well as access to the same services that are provided to members of the general public. "For new construction and alterations, the purpose is *to ensure that the service offered to persons with disabilities is equal to the service offered to others*." *Id.*

70. As the legislative history makes clear, the ADA is geared to the future-- the goal being that, over time, access will be the rule rather than the exception. Thus, the ADA only requires modest expenditures to provide access in existing facilities, *while requiring all new construction to be accessible.* H.R. Rep. 485, Part 3, 101st Cong., 2d Sess. 63 (1990).

71. To realize its goal of a fully accessible future, Congress required that all newly constructed facilities be designed and constructed according to architectural standards set by the Attorney General. 42 U.S.C. §§ 12183(a), 12186(b). Those Standards for Accessible Design ("Standards") are incorporated into the Department of Justice's regulation implementing title III of the ADA, 28 C.F.R. Part 36, Appendix A. The Standards set architectural requirements for newly constructed buildings that apply to all areas of the facility, from parking areas, interior walkways and entrances, common

areas, interior stairways and elevators, restrooms, dressing rooms and sales/service areas.

72. Defendant, "operates" and "leases" the Buckle retail store and at all relevant times was and is directly involved in the designing and/or construction of its store in this litigation for first occupancy after January 1993.

73. Defendant was and is required to design and construct the Buckle retail store to be "readily accessible to and usable by individuals with disabilities." Defendant violated the statute by failing to design and construct *its retail store to be* readily accessible to and usable by individuals with disabilities including individuals who use wheelchairs. Defendant further violated the statute by failing to design and construct its retail store in compliance with the ADA during planned alterations as described throughout this Complaint.

74. According to Defendant's own publicly available information, Defendant chose to design its retail store in a way that is not ADA Title III compliant whatsoever. Defendant literally strategically locates its merchandise display tables and racks throughout its store without any regard to the disabled. Defendant's systematic design

of its store fails to afford disabled individuals the same shopping experience that is afforded to individuals without disabilities.

75. To date, the Defendant's discriminating actions continue.

76. Plaintiff has been obligated to retain the undersigned counsel for the filing and prosecution of this action. He is entitled to have his reasonable attorney's fees, costs and expenses paid by the Defendant pursuant to 42 U.S.C. § 12205.

77. Pursuant to 42 U.S.C. § 12188 this Court is authorized to enjoin these illegal actions by Defendant.

**WHEREFORE**, premises considered, John Smith demands judgment against the Defendant on Counts One through Four and requests the following injunctive and declaratory relief:

1. That the Court declare that the property owned and business operated by the Defendant as well as all Defendant's illegal actions described herein violate the Americans with Disabilities Act, as more particularly described above;

2. That the Court enter an order enjoining the Defendant to alter the facility to make it accessible to and usable by individuals with disabilities to the full extent required by Title III of the ADA,

to comply with 42 U.S.C. § 12182(b)(2)(A)(iv) and its implementing regulations, as stated in Count One;

3.   That the Court enter an order, in accordance with Count Two, directing the Defendant to modify its policies, practices, and procedures both to remedy the numerous ADA violations outlined above, in violation of 42 U.S.C. § 12182(b)(2)(A)(ii), and to permanently enjoin Defendant to make its business practices consistent with ADA Title III in the future;

4.   That the Court enter an order directing the Defendant to provide Plaintiff full and equal access both to the Buckle shopping experience and to the use of the Buckle facility, and further order Defendant to maintain the required accessible features at the retail store so that Plaintiff and others similarly situated are offered the experience that is offered to non-disabled individuals, as stated in Count Three;

5.   That the Court enter an Order directing the Defendant to evaluate and neutralize its policies, practices, and procedures towards persons with disabilities for such reasonable time so as to allow them to undertake and complete corrective procedures;

**6.** That the Court enjoin Defendant to remediate the Buckle retail store to the proper level of accessibility required for the design and construction of the facility for first occupancy, as stated in Count Four;

**7.** That the Court award reasonable attorney's fees, costs, (including expert fees) and other expenses of suit, to Plaintiff; and

**8.** That the Court award such other, further, and different relief as it deems necessary, just, and proper.

Respectfully Submitted, this the 19th Day of June, 2017.


*/s/Cassie E. Taylor*
**CASSIE E. TAYLOR**
**BPR # AL-8297N67R**
The ADA Group LLC
4001 Carmichael Road, Suite 570
P.O. Box 6429 (36106)
Montgomery, AL 36106
334.819.4030 p
334.819.4032 f
CET@ADA-Firm.com
*Attorney for the Plaintiff*

*/s/L. Landis Sexton*

**L. LANDIS SEXTON**
**BPR # AL-5057N71L**
The ADA Group LLC
4001 Carmichael Road, Suite 570
Montgomery, Alabama 36106
334.819.4030 p
334.819.4032 f
LLS@ADA-Firm.com
*Attorney for the Plaintiff*

*/s/Tracy G. BirdSong*

**Tracy G. BirdSong**
**BPR # AL-2170D64T**
The ADA Group LLC
4001 Carmichael Road, Suite 570
Montgomery, Alabama 36106
334.819.4030 p
334.819.4032 f
TGB@ADA-Firm.com
*Attorney for the Plaintiff*

## CERTIFICATE OF SERVICE

This is to certify that I have this day filed with the Clerk of Court the aforementioned Complaint for service of process by USPS mail or electronic mail, postage prepaid and properly addressed this 19th day of June, 2017 to the following:


**THE BUCKLE, INC.**
c/o NATIONAL REGISTERED AGENTS INC
attn.: Registered Agent
2 North Jackson Street, Suite 605
Montgomery, AL 36104


/s/*Cassie E. Taylor*
  **CASSIE E. TAYLOR**
  **BPR # AL-8297N67R**
  The ADA Group LLC
  4001 Carmichael Road, Suite 570
  P.O. Box 6429 (36106)
  Montgomery, AL 36106
  334.819.4030 p
  334.819.4032 f
  CET@ADA-Firm.com
  *Attorney for the Plaintiff*